GOSPEL MISSIONS OF AMERICA, a religious corporation; Erich Wagner, II; Ray Austin; Ron Barber; P.J. Bourbonnais; Jay Bowman, Jr.; William Campbell; Warren Daly; Edward Ebeling; Allan Gathungu; Douglas Gorden; Jeremy Harsh; Kelvin Jackson; James Kahl; John D. Love; George Lownes; Michael Medford; John Proctor; James C. Roberts; James Rodgers; David Root; Donald Stach; James Vanderpoel; Brenda Wagner; Paul Winn; Thomas Wise; Ruth Washington; Ray Zedd, Plaintiffs–Appellants,

v.

CITY OF LOS ANGELES; Los Angeles Work Airports; Henry Acosta, as an individual and in his official capacity as Officer for the Airport Police Bureau; Shirley Flucus, as an individual and in her official capacity; Ronald E. Marbrey, as an individual and in his official capacity, Defendants–Appellees.

No. 00–55993.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Nov. 7, 2001.

Filed Aug. 8, 2002.

James H. Fosbinder, Rhonda M. Fosbinder, Fosbinder and Fosbinder, Kahului, Hawaii, for the plaintiffs-appellants.

John M. Werlich, Office of the City Attorney, Los Angeles, California, for the defendants-appellees.

Before GOODWIN, WALLACE and THOMAS, Circuit Judges.

## OPINION

WALLACE, Senior Circuit Judge.

Gospel Missions of America (Gospel Missions) appeals from a summary judgment in favor of the City of Los Angeles (City) in an action stemming from the City's attempt to enforce against Gospel Missions an amended version of its charitable solicitations law. Gospel Missions argues that the City is in contempt of an injunction against the City's enforcement of certain provisions of the pre-amended version of that law and that the threatened enforce-

ment of new provisions in the law would violate Gospel Missions' First Amendment rights.

The district court had jurisdiction under 28 U.S.C. §§ 2201–02, 1331 and 1343(a)(3)-(4). We have jurisdiction under 28 U.S.C. § 1291. We affirm in part and vacate and remand in part.

## I

The City regulates charitable solicitations. *See* L.A., Cal., Municipal Code (L.A.M.C.) §§ 44.00–44.15. The current version of the Los Angeles charitable solicitation law (Ordinance) requires all persons intending to solicit charitable contributions within the city to file an application with the Los Angeles Police Department. *Id.* § 44.04. The Police Department then investigates the information provided and determines whether to issue an Information Card to the applicant. *Id.* § 44.02. No one may solicit charitable contributions in the City without an Information Card. *Id.* § 44.09. The City also imposes an additional set of requirements on "Professional Fundraisers." *Id.* §§ 44.14. Professional fundraisers are those who solicit charitable contributions on behalf of others for gain. *Id.* § 44.00(f).

Gospel Missions is a non-profit religious corporation that provides ministry and shelter to homeless individuals, who in turn solicit funds and share some of the proceeds with Gospel Missions. In 1992, five of its properties were raided by the Los Angeles County Sheriff's Department because the Sheriff's Department believed Gospel Missions might be violating city and county charitable solicitation laws.

In response to the raid, Gospel Missions filed suit against the City and Los Angeles County (County) and included in its allegations constitutional challenges to the City and County charitable solicitation laws. The district court entered summary judgment in favor of Gospel Missions and en-

joined the City and County from enforcing numerous provisions of their respective laws. *See Gospel Missions of America v. Bennett,* 951 F.Supp. 1429 (C.D.Cal.1997) (*GMA I*).

The City then amended the Ordinance (Amended Ordinance) in an attempt to comply with the *GMA I* injunction. Gospel Missions reluctantly complied with the Amended Ordinance's requirement that it obtain an Information Card before soliciting. It then instituted this action (*GMA II*) with the expectation that its members would not be allowed to solicit funds upon the expiration of its Information Card in July of 2000.

At a *GMA II* status conference, the district court gave Gospel Missions thirty days to file a summary judgment motion. After the City filed its response to the motion, the court sua sponte granted summary judgment in the City's favor. On appeal, Gospel Missions argues (1) that the district court's sua sponte summary judgment for the City denied it a full opportunity to develop its claims; (2) that numerous provisions applying to professional fundraisers in the Amended Ordinance are either in contempt of the *GMA I* injunction or unconstitutional; (3) that the district court failed to address Gospel Missions' vagueness, overbreadth and equal protection arguments; and (4) that two of the non-professional fundraiser provisions in the Amended Ordinance—section 44.15(b) and section 44.02(b)(2)—are either in contempt of the *GMA I* injunction or unconstitutional. We address each argument in turn.

## II

Even when there has been no cross-motion for summary judgment, a district court may enter summary judgment sua sponte against a moving party if the losing party has had a "full and fair oppor-

tunity to ventilate the issues involved." *Cool Fuel, Inc. v. Connett,* 685 F.2d 309, 312 (9th Cir.1982). The salient issues upon which the district court granted summary judgment were presented in the original motion. A fair examination of the record discloses that Gospel Missions had "a full and fair opportunity to ventilate the issues involved." Therefore, the district court did not commit reversible error by acting sua sponte.

### III

■ The district court determined that Gospel Missions does not have standing to challenge the Amended Ordinance's professional fundraiser provisions. We review de novo the district court's standing decision. *Tyler v. Cuomo,* 236 F.3d 1124, 1131 (9th Cir.2000). Gospel Missions argues that the district court is barred by claim and issue preclusion from determining that it does not have standing to challenge the professional fundraiser provisions because the district court in *GMA I* already determined that Gospel Missions had standing to challenge them.

### A

■ In *Migra v. Warren City School District Board of Education,* 465 U.S. 75, 77 n. 1, 104 S.Ct. 892, 79 L.Ed.2d 56 (1984), the Supreme Court described claim preclusion as "the effect of a judgment in foreclosing litigation of a matter that has never been litigated, because of a determination that it should have been advanced in an earlier suit" and issue preclusion as "the effect of a judgment in foreclosing relitigation of a matter that has been litigated and decided."

Our decisions on the subject of claim and issue preclusion have not been a model of clarity. Compare *Frank v. United Airlines, Inc.,* 216 F.3d 845, 850 n. 4 (9th Cir.2000) (claim preclusion refers to claims that were raised or should have been raised in earlier litigation) with *Ross v. Alaska,* 189 F.3d 1107, 1110 n. 2 (9th Cir. 1999) (claim preclusion refers only to claims that should have been raised in earlier litigation but were not). Since *Migra* is controlling, we will follow its formulation.

■ Since Gospel Missions argues that the standing question has already been decided, its argument addresses issue preclusion. Courts have characterized the issue preclusion doctrine in many different ways. *See* 18 Charles A. Wright, Arthur R. Miller, & Edward H. Cooper, Federal Practice & Procedure §§ 4416, 4419–21 (1981) (Wright & Miller). However, among the issue preclusion requirements are two that are particularly relevant to this case: the issue must have been "both 'actually litigated' and 'necessarily decided' in the former decision." *United States v. Weems,* 49 F.3d 528, 532 (9th Cir.1995).

■ Gospel Missions' standing to challenge the professional fundraiser provisions in *GMA I* was not "actually litigated" in its ordinary sense. Gospel Missions did not challenge the professional fundraiser provisions in *GMA I* until it submitted its supplemental trial brief and, even then, neither party raised the standing question. Since the standing issue was not framed in the pleadings or contested by the parties in *GMA I,* issue preclusion normally would not bar the district court's standing decision. *See* 18 James Wm. Moore et al., Moore's Federal Practice §§ 132.03[2][b]-[c] (3d ed. 2001)(Moore's), Wright & Miller § 4419. However, this case is different because the district court necessarily had to resolve the issue to form the basis of its decision. The district court must necessarily have decided whether Gospel Missions had standing to challenge the ordinance's professional fundraiser provisions, because if Gospel Missions had not had standing, then the district court would have lacked jurisdiction to issue the injunc-

tion prohibiting enforcement of the professional fundraiser provisions it found unconstitutional. This case is not unlike *Weems,* in which we struggled with a similar issue. There, a prior forfeiture proceeding may have resulted in the litigation of the issue of whether there was a lack of knowledge of a marijuana growing operation. Two forfeiture statutes were involved and only one would have resulted in preclusion. Because the district court reached both statutory sections, we held the issue of knowledge precluded, although the actual section relied on for forfeiture did not have a knowledge requirement. *Weems,* 49 F.3d at 532. We believe *Weems* controls. Thus, we conclude that we are bound by the district court's conclusion or, more properly, its unidentified position, that Gospel Missions had standing to challenge the professional fundraiser provisions in *GMA I.* But this standing is limited, as far as issue preclusion is concerned, to the Ordinance. Thus, the issue of standing is precluded only to the extent that the professional fundraiser provisions in the Amended Ordinance are the subject of the *GMA I* injunction. Issue preclusion does not prevent us from determining whether Gospel Missions has standing to challenge those portions of the professional fundraiser provisions in the Amended Ordinance that do not run afoul of the *GMA I* injunction.

B

■ We thus consider whether Gospel Missions has standing to challenge the professional fundraiser provisions of the Amended Ordinance to the extent those provisions are not contrary to the *GMA I* injunction. To have standing, Gospel Missions must show that it has suffered an "injury-in-fact," that its injury is "traceable" to the City's actions, and that its injury will likely be "redressed" by this action. *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560–61, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992).

■ Gospel Missions first argues that it has standing to challenge the professional fundraiser provisions because its members were deprived of the ability to solicit funds for approximately two months. While this may constitute an injury, it is not traceable to the professional fundraiser provisions of the Amended Ordinance. Gospel Missions members were threatened with arrest and therefore unable to solicit because they did not have an Information Card as required by the Amended Ordinance. Because the Information Card requirement is part of the general provisions of the Amended Ordinance rather than its professional fundraiser provisions, the injury Gospel Missions alleges is not traceable to the professional fundraiser provisions. Gospel Missions cannot base its standing to challenge those provisions on its members' inability to solicit funds for the two month period.

Citing *Gooding v. Wilson,* 405 U.S. 518, 92 S.Ct. 1103, 31 L.Ed.2d 408 (1972), Gospel Missions also argues that it has standing to challenge the Amended Ordinance's professional fundraiser provisions because its professional fundraiser definition is vague. However, the *Gooding* case addresses only the First Amendment overbreadth standing doctrine and thus does not help Gospel Missions.

■ Finally, Gospel Missions argues that it has standing to challenge the professional fundraising provisions of the Amended Ordinance because those provisions violate Gospel Missions' First Amendment right to hear speech or, in this case, to be solicited. This is not sufficient to establish Gospel Missions' standing to challenge the Amended Ordinance's professional fundraiser provisions because it alleges only a mere "possibility of future injury." Moore's § 101.40[7][b]; *see Whit-*

*more v. Arkansas,* 495 U.S. 149, 158, 110 S.Ct. 1717, 109 L.Ed.2d 135 (1990). Because Gospel Missions has not been injured by the City's professional fund-raiser provisions that were not the subject of the *GMA I* injunction, it does not have standing to challenge them.

■ We now turn to whether the City is in contempt of the *GMA I* injunction as it applies to professional fundraisers. The district court in *GMA I* enjoined the City from *"enforcing* those provisions of the [Ordinance] that are inconsistent with the First Amendment, as set forth in this Order." *GMA I,* 951 F.Supp. at 1455. Since the City has not sought and does not plan to seek to enforce the professional fund-raiser provisions against Gospel Missions, it has not run afoul of the injunction. Therefore, there is no reason for us to decide in this case whether the amended professional fundraiser provisions would violate the injunction if enforced.

## IV

The district court did not err when it failed to address Gospel Missions' vagueness, overbreadth, and equal protection arguments. These arguments, raised by Gospel Missions in its summary judgment motion, focused on the professional fundraiser provisions. Because Gospel Missions does not have standing to challenge these provisions, the district court did not err when it disregarded them.

## V

■ Gospel Missions further argues that section 44.15(b) is either unconstitutional or in contempt of the *GMA I* injunction. Under section 44.15, the Police Department may endorse charitable organizations that meet certain requirements. L.A.M.C. § 44.15. Gospel Missions never sought endorsement. It therefore does not have standing to challenge section 44.15(b) for the same reason that it does not have standing to challenge the professional fundraiser provisions.

## VI

■ We now address whether section 44.02(b)(2) in the Amended Ordinance is contrary to the *GMA I* injunction. Section 44.09 in the Ordinance and Amended Ordinance prohibits the solicitation of charitable contributions without an Information Card. Section 44.02(e) in the Ordinance identified the information to be placed on the Information Card. In *GMA I,* Gospel Missions challenged the constitutionality of section 44.02(e)(4) which permitted the City to place on the information card "[a]ny additional information" it deemed appropriate. *See GMA I,* 951 F.Supp. at 1445–46. The district court, in *GMA I,* determined that section 44.02(e)(4) was unconstitutional and enjoined its enforcement. *Id.* In response to the injunction, the City deleted section 44.02(e)(4) and moved the remainder of section 44.02(e) to section 44.02(b)(2) in the Amended Ordinance. Amended Ordinance section 44.02(b)(2) is not contemptuous of the *GMA I* injunction because section 44.02(e)(4), the subject of the *GMA I* injunction, was deleted from the Amended Ordinance.

■ However, the surviving endorsement requirement in section 44.02(b)(2) raises a constitutional issue. Whether we can address it depends on whether claim preclusion bars Gospel Missions from raising this argument here because it could have but did not raise it in *GMA I.* We conclude that claim preclusion does not bar this claim because the complained-of conduct (the City's attempt to enforce the Amended Ordinance against Gospel Missions) occurred after *GMA I. See Harkins Amusement Enters., Inc. v. Harry Nace Co.,* 890 F.2d 181, 183 (9th Cir.1989); *see also* Wright & Miller § 4409.

We must, therefore, address the merits of Gospel Missions' argument. The district court relied on *Village of Schaumburg v. Citizens for a Better Environment,* 444 U.S. 620, 100 S.Ct. 826, 63 L.Ed.2d 73 (1980), when it concluded that the endorsement requirement was constitutional. *Schaumberg,* while helpful, is not controlling because it addressed the constitutionality of a municipal permit requirement, *see id.* at 623–24, 100 S.Ct. 826, not the constitutionality of a requirement for solicitors to exhibit or display certain information before soliciting. The controlling case for the kind of compelled speech requirement at issue here is *Riley v. National Federation of the Blind of North Carolina, Inc.,* 487 U.S. 781, 108 S.Ct. 2667, 101 L.Ed.2d 669 (1988). We observe that the Supreme Court recently invalidated a local ordinance that required door-to-door "canvassers" to both obtain a permit before canvassing and to display that permit when canvassing. *Watchtower Bible and Tract Soc'y of New York, Inc. v. Village of Stratton,* —— U.S. ——, 122 S.Ct. 2080, 153 L.Ed.2d 205 (2002). The Supreme Court, however, gave no indication in *Stratton* that it meant to depart from its ruling in *Riley.* Since the ordinance in *Stratton* regulated canvassing in general and not just charitable solicitations, we conclude that *Riley* still controls our decision.

In *Riley,* the Supreme Court addressed the constitutionality of a provision in North Carolina's Charitable Solicitations Act that required professional fundraisers to disclose to potential donors the percentage of funds retained in earlier solicitations. *See id.* The Court stated that the forced disclosure was a content-based regulation that deserved "exacting First Amendment scrutiny," *id.* at 798, 108 S.Ct. 2667, and proceeded to determine whether the state had shown a "compelling [need]" to force the disclosure and whether the regulation was "precisely tailored." *Id.* at 800, 108 S.Ct. 2667. The Court struck down the forced disclosure requirement because the state's interest in the regulation was not sufficiently compelling and because the state could have used more benign alternatives to reach its objectives. *Id.* at 798–803, 108 S.Ct. 2667.

There are significant differences between the disclosure requirement in *Riley* and section 44.02(b)(2). Section 44.02(b)(2), for example, requires all solicitors of charitable donations (rather than just professional fundraisers) to present their Information Card to prospective donors. *See* L.A.M.C. § 44.02(b)(2). Moreover, 44.02(b)(2) requires that the Information Card state that the solicitor is either endorsed or not endorsed; it does not require the kind of detailed disclosure that was at issue in *Riley. See id.* § 44.02(b)(2); *Riley,* 487 U.S. at 784, 108 S.Ct. 2667. On the other hand, it accomplishes a similar, if not a more intrusive end than the statute at issue in *Riley,* because the presence or absence of endorsement in this case indicates whether the solicitor has complied with an extensive list of requirements that are set out in section 44.15(a), one of which is a requirement that the organization not pay out more than 20% of the funds collected for solicitation expenses. L.A.M.C. § 44.15(a)(7).

■ Differences aside, the Information Card endorsement requirement is a form of compelled speech that should have been subject to the same exacting scrutiny that was applied in *Riley.* This does not mean that all compelled disclosure requirements are doomed. The Court stated in *Riley* that the City may require a fundraiser to disclose name, address and professional status information. *Id.* at 799 n. 11, 108 S.Ct. 2667. The endorsement requirement in 44.02(b)(2), though, is different from the

kind of limited factual disclosure that was approved by the Court in *Riley.*

Because the record before us prevents us from making the determination required by *Riley,* and because the district court should have the first opportunity to rule on this issue, we vacate the district court's endorsement requirements holding and remand to the district court for it to make the determination, consistent with the Supreme Court's decision in *Riley.*

Gospel Missions also argues that the City's enforcement efforts constitute an illegal custom or policy under *Monell v. Department of Social Services,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). The district court should address this *Monell* argument if it determines that section 44.02(b)(2) is unconstitutional.

AFFIRMED IN PART, VACATED IN PART AND REMANDED.